UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRICIA DIAMOND** | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **THE CITY OF NEW ORLEANS** | **SECTION** |

## COMPLAINT

NOW COMES Complainant, Tricia Diamond, who asserts the following claims for relief:

### Parties

1.

Tricia Diamond is a person of the full age of majority domiciled in the State of Washington.

2.

Defendant, the City of New Orleans, is a political subdivision and municipality organized and existing under the laws of the State of Louisiana, with the capacity to sue and be sued. At all times material hereto, the City of New Orleans was the employer of Diamond.

### Jurisdiction and Venue

3.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C §§ 1331, 1332, and 1367 as this matter arises under federal law, including the False Claims Act, 31 U.S.C. § 3729, *et seq.*, among citizens of different states, and under Louisiana state law.

1

4.

Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana.

**Factual Background**

5.

The American Rescue Plan Act ("ARPA") is a federal fiscal recovery aid for state and local governments to mitigate the fiscal effects stemming from the COVID-19 public health emergency.

6.

ARPA was signed into law on March 11, 2021, disbursing $1.9 trillion of relief and support directly to state and local governments.

7.

Some $386,000,000.00 in federal ARPA funds were disbursed to the City of New Orleans.

8.

The City of New Orleans hired Tricia Diamond in October 2023, as the Director of the City's APRA Implementation Project Management Office.

9.

Diamond was well qualified to direct the City's ARPA implementation as she has master's degrees in both educational administration and mathematics, a doctorate of philosophy in aerospace engineering, and 20 years' experience in project management, including seven years working in government for King County, Washington, including work as a senior project manager (Project Manager IV).

10.

Further, as the City's Director of ARPA Implementation Project Management Office, Diamond was familiar with the ARPA regulations promulgated by the Unted States Department of Treasury that defined eligibility and funding requirements for the disbursement of ARPA funds.

11.

At all times material to this suit, Courtney Story, the Director of Administration and Planning for the City of New Orleans, was Diamond's immediate supervisor.

12.

Upon arriving in New Orleans from Seattle, and beginning work as the City's ARPA Implementation Director, Diamond learned that Story had already hired ARPA project managers, none of whom had senior project manager experience, and two of whom had no project management experience at all and were not eligible to sit for Project Management Institute certification exams.

13.

Diamond complained to Corneisha Brown, the City's CAO of Personnel & Training, about Story's promotion of ARPA project managers who were not qualified for their positions.

14.

After Diamond's complaint, Story instructed Diamond to work with Brown and Personnel Director Amy Trepagnier on Job Study Questionnaires to retroactively create civil service positions for the unqualified staff that Story had already hired. Diamond raised concerns and objected to this as an improper attempt to legitimize unqualified hires, several of whom fraudulently sat for PMI exams they were not eligible to take.

15.

Thereafter, although Diamond remained nominally the City's ARPA director, she was effectively demoted and Story (who was not a project manager) took over Diamond's authority as Director and thereafter made all decisions concerning ARPA funding, the amounts of ARPA funds allocated, and the staffing of ARPA implementation personnel.

16.

Among Story's funding decisions was the allocation of approximately $5,000,000.00 in ARPA funds to Undue Medical Debt, LLC.

17.

As ARPA Implementation Director, Diamond reviewed invoices submitted to the City by Undue Medical Debt, accounting for the company's use of ARPA funds.

18.

Diamond rejected numerous vague invoices submitted by Undue Medical Debt – invoices that were missing the names of individuals supposedly entitled to healthcare-related debt relief and which did not include the amounts owed by each individual or the dates of service giving rise to the alleged debt.

19.

Diamond routinely informed Story of the invoices that Diamond rejected as being inadequately documented and for which ARPA funds could not be lawfully expended.

20.

Story overrode Diamond's rejection of unsubstantiated invoices and ordered that all invoices submitted by Undue Medical Debt be paid using the City's ARPA funds.

21.

Ultimately, Story left her position at the City and was hired by Undue Medical Debt as its Vice President of Government Initiatives.

22.

Before doing so, Story continued to distribute ARPA funds as she saw fit and continued to ignore Diamond's objections to the legality of Story's decisions.

23.

Among the recipients of Story's ARPA funding decisions was 9th Ward Stadium, Inc., a corporation formed to construct a football stadium in eastern New Orleans.

24.

Diamond informed Story that Treasury Department regulations made stadium construction projects expressly ineligible for the receipt of ARPA funds.

25.

In response, Story ordered Diamond and others to refer to the 9th Ward Stadium as the "9th Ward Athletic Center."

26.

On information and belief, Story disbursed $10,000,000.00 in ARPA funds to the 9th Ward Stadium.

27.

Story also submitted legally required quarterly reports to the United States Department of Treasury accounting for the City's expenditure of ARPA funds. Because the reports were inaccurate – and based on spreadsheets created by Story and which Story knew to be false and

inaccurate – Diamond refused to approve them.   Story had subordinate employees submit the false reports anyway over Diamond's objection.

28.

Diamond complained to Story about the above-described misuse of ARPA funds throughout 2024, in person during regular meetings, but Story did nothing to address Diamond's objections and concerns.

29.

Even after Story left the City's employ and began working for Undue Medical Debt, she continued to contact ARPA project managers working for the City in order to influence ARPA funding decisions, staffing decisions, and the contents of quarterly reports to the Department of Treasury.

30.

In January 2025, Diamond complained to Brandye DeLarge, the City's Budget Administrator who succeeded Story, about Story's continued involvement in the City's ARPA implementation.   DeLarge informed Diamond that she would talk about the issue with the City's CAO, Gilbert Montano.

31.

But the City took no steps to stop Story's continued involvement in ARPA implementation.

32.

In February 2025, Diamond took medical leave to undergo surgery.   Thereafter, in April 2025, Diamond took employment leave under the terms of the federal Family and Medical Leave Act.

33.

While Diamond was on medically approved FMLA leave and unable to return to work without medically necessary accommodation, the City fired her effective July 18, 2025.

34.

The City of New Orleans fired Diamond in retaliation for her objections to and attempts to remedy The City's false claims and illegal acts and practices in the use and disbursement of ARPA funds.

### Count I.   Retaliation – Federal Law.

35.

Diamond re-avers and re-alleges the preceding allegations of this Complaint.

36.

At all times material hereto, Diamond was an employee of the City of New Orleans entitled to protection from retaliation by the City of New Orleans and those acting on its behalf pursuant to 31 U.S.C. § 3730(h).

37.

Diamond reported to the City's officers and employees, both verbally and in writing, the foregoing false claims and unlawful conduct by the City and its officers and employees.

38.

As set forth, the City of New Orleans first demoted and later discharged Diamond because of her lawful acts in investigating, reporting, and attempting to remedy and stop, the false claims and unlawful conduct by the City of New Orleans and its officers and employees.

39.

Diamond is therefore entitled to all damages and other relief pursuant to 31 U.S.C. § 3730(h)(2), or other applicable law.

## Count II.    Retaliation – Louisiana Law.

40.

Diamond re-avers and re-alleges the preceding allegations of this Complaint.

41.

At all times material hereto, Diamond was an employee of the City of New Orleans entitled to protection from retaliation and reprisal by the City of New Orleans and those acting on its behalf pursuant to La. R.S. 23:967.

42.

Diamond reported to the City's officers and employees, both verbally and in writing, her objection to and refusal to participate in the above-described acts and practices done in violation of law.

43.

As set forth, the City of New Orleans first demoted and later discharged Diamond because of her objection to and refusal to participate in the above-described acts and practices done in violation of law.

44.

Diamond is therefore entitled to all damages and other relief pursuant to La. R.S. 23:967.

## Jury Demand

45.

Diamond demands a trial by jury for all claims and issues so triable.

## Prayer for Relief

**WHEREFORE,** Complainant, Tricia Diamond, prays that this Complaint be deemed good and sufficient and that after due proceedings are had, judgment be rendered in her favor and against the City of New Orleans for the following damages and relief:

A. All general and special damages suffered by Diamond caused by the City of New Orleans's retaliatory demotion and discharge of Diamond, including damages for emotional and mental anguish, outrage, anxiety, depression, humiliation, embarrassment, and loss of enjoyment of life;.

B. Reinstatement of employment or front pay in lieu thereof, including wages and benefits;

C. Two times the amount of back pay, including wages and all benefits, and including interest on all back pay;

D. Punitive damages and exemplary damages;

E. All costs and attorney's fees incurred in the prosecution of this matter;

F. Judicial interest, including interest on costs, to the full extent allowed by law;

G. All general and equitable relief that this Court deems to be just and proper under the circumstances.

Respectfully submitted:

/s/ Kearney S. Loughlin
KEARNEY S. LOUGHLIN
La. State Bar No. 26391
602 Boulder Creek Parkway
Lafayette, Louisiana 70508
Telephone:	(337) 534-8803
Facsimile:	(337) 628-2161
Email:	kearney.loughlin@gmail.com

And by

NANAK S. RAI
La. State Bar No. 22852
3800 Nashville Avenue
New Orleans Louisiana 70125
Telephone:	(504) 866-5275
Facsimile:	(504) 861-4032
Email:	bigeasylaw@att.net
**Attorneys for Tricia Diamond**